# Nace's Estate.

*Mortgage—Simple mortgage without covenant to pay—Obligation to pay—Evidence of promise—Recitals in mortgage—Lost bond—Testamentary fund charged on land—Evidence.*

1. While no action to enforce a personal liability can be founded alone upon a simple mortgage which contains no express covenant to pay, the grantor of land who has parted with the title without receiving the purchase money may still recover in a personal action upon establishing a promise, either oral or written, of the grantee to be personally bound. Recitals in the mortgage itself are evidence of a promise to pay.

2. Where a widow who is entitled to the interest of a fund charged by her husband's will on land, takes from her husband's executor, who has a power of sale, a deed for the land, and the consideration named is the exact amount of the principal of the charge thereon, and contemporaneously with the execution of the deed, executes a mortgage to the executor as trustee in which she recites that by her written obligation of even date she stood firmly bound to pay an amount equal to the charge immediately upon her decease, such recitals are proof of the existence of a bond, which could not be found, and are sufficient to charge the estate of the widow after her death with the payment of the principal of the charge, in the absence of any evidence that it had ever been paid to the trustee of the mortgage in her lifetime.

Argued Nov. 20, 1912. Appeal, No. 218, Oct. T., 1912, by Harvey Nace et al., from decree of O. C. Bucks Co., May T., 1912, sustaining exceptions to auditor's report in Estate of Mary Ann Nace, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Exceptions to report of Howard I. JAMES, Esq., auditor.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in sustaining exceptions to auditor's report.

*Asher K. Anders, George Ross, Thomas Ross* and *Harman Yerkes,* for appellants.—The recitals in the mortgage were admissible: Hunt's App., 100 Pa. 590; Hodges v. Hodges, 56 Mass. 455; Dunn v. Eaton, 92 Tenn. 743 (23 S. W. Repr. 163); Grayson v. Lofland, 21 Tex. Civ. App. 503 (52 S. W. Repr. 121).

*J. C. Swartley,* of *Swartley & Bunting,* with him *J. Kirk Leatherman,* for appellees.

OPINION BY PORTER, J., February 27, 1913:

Mary Ann Nace died March 7, 1910, intestate, and the fund for distribution in the present proceeding is shown by the account of the administrator of her estate to be the proceeds of personal property. She was the widow of Jonas Nace, deceased, having been his second wife. An auditor having been appointed to make distribution of the fund, the appellants, who are the heirs of Jonas Nace, being his children by a first marriage, presented a claim for $1,200, with interest from March 7, 1910, alleging that it was a debt for which Mary Ann Nace was personally liable, and which they were entitled to have paid out of this fund. The auditor allowed and made distribution to the claim, but the court below, upon exception, held that the evidence produced before the auditor was not sufficient to establish a claim against this fund and awarded the entire fund to the collateral heirs of Mary Ann Nace. The claimants appeal from that decree.

The inquiry in this case did not present any disputed question of fact, to be determined from conflicting oral testimony. The appellants based their claim entirely upon documentary evidence, the genuineness of which was admitted. Jonas Nace died in 1891 seized of a tract of land containing about seven acres, upon which he then resided. He left a will which was duly proved, containing,

inter alia, the following provision: "I give and bequeath unto Mary Ann Nace . . . . and the interest of $1,200 at five per cent., to be paid to her annually on the first day of April, and the principal sum of $1,200 to be secured in the lot on which I now reside, and after her decease, the within described $1,200 is to be paid to my heirs, or their legal representatives, by the owner of the said real estate at that present time, or other parties authorized to do the same." The will directed the executor, Joseph N. Gross, to sell all the real estate of the testator, and empowered him to execute and deliver deeds for the same. Gross, the executor, acting under this power in the will, sold and conveyed the tract of land in question, by deed dated March 29, 1892, to Mary Ann Nace, the widow, for the consideration of $1,200, the exact sum directed by the will to be secured upon the tract, the interest to be paid to the widow during life, and the principal, upon her death, to the heirs of the testator. Mary Ann Nace, upon the same day, executed and delivered a mortgage to Joseph N. Gross, who was therein designated as "trustee under the last will and testament of Jonas Nace, deceased, for the heirs and legal representatives of Jonas Nace, deceased." "Being simply a dry trustee or stakeholder for said heirs or legal representatives, and no liability beyond," in the language of the instrument. This mortgage referred to the deed from the executor, of even date therewith, and was given to secure the payment of the principal sum of $1,200, "immediately after the decease of Mary Ann Nace, widow of said Jonas Nace, deceased, to the heirs and legal representatives of the said Jonas Nace, deceased, together with interest to be paid to Mary Ann Nace, widow of said Jonas Nace, deceased, payable annually at the rate of five per cent. per annum; on the first day of April of every year during the whole of the period of her life." It thus appeared, from the deed and mortgage contemporaneously executed and delivered, that when Mary Ann Nace purchased this property from the executor she paid no part

of the purchase money, and that the principal sum of that purchase money was not to become payable until after her death. The deed and the mortgage clearly disclose that the parties recognized the dual capacity in which Mary Ann Nace thus became interested in the land; as purchaser she acquired a title in fee and, as widow, she was entitled to receive the interest on the purchase money during her life, and for the purpose of showing that the terms of the will of Jonas Nace had been observed, it was provided that Mary Ann Nace, as purchaser, should annually pay the interest to herself, as widow.

There is no question that the principal of the $1,200 remained a charge upon the land, of which Mary Ann Nace appears to have continued seized until the day of her death; nor is there any doubt that the present appellants are the persons who upon her death became entitled to receive payment. The mere fact, however, that they were the holders of a mortgage which secured payment of this money out of the land would not entitle them to payment out of the proceeds of personal property. A mortgage is not of itself an instrument which imports any personal liability for the money it secures, unless it contains some covenant to pay, expressed or necessarily implied: Scott v. Fields, 7 Watts, 360. But the taking of a simple mortgage does not necessarily operate as an extinguishment of the claim it secures; securities may be cumulated for the same debt; a personal bond or promise may be given in connection with the mortgage, the personal obligation as representing the debt, being the principal, and the mortgage incident or accessory to it: Clarke v. Stanley, 10 Pa. 472. While, therefore, no action to enforce a personal liability can be founded alone upon a simple mortgage, which contains no express covenant to pay, the grantor of land, who has parted with the title without receiving the purchase money, may still recover in a personal action upon establishing a promise, either oral or written, of the grantee to be personally bound: Baum v. Tonkin, 110 Pa. 569. A grantor seeking to

establish that his grantee has made a covenant, oral or written, to personally pay unpaid purchase money, may avail himself of any evidence which would otherwise be competent, whether he has accepted a simple mortgage or not. It was said by Mr. Justice CLARK, in Baum v. Tonkin, 110 Pa. 569, that, in such a case, a mortgage which not only did not contain an express covenant to pay, nor even an acknowledgment of a debt, was admissible merely as corroborative evidence of the amount of purchase money in arrear, in support of testimony tending to establish an oral promise to be personally bound. The mortgage to which the learned justice was in that opinion referring must necessarily merely be corroborative, for it did not contain a covenant to pay, nor did it contain any recital that the mortgagor had made any promise to pay or had in any manner become indebted. The important principle which was involved in that decision was that the mortgage was admissible as evidence of the facts which it did recite although the facts recited, if true, were not of themselves sufficient to establish liability. That a mortgage, as between the parties, is competent evidence of the facts therein recited, not only seems to be sound in principle, but is recognized by authority which we are not at liberty to disregard: Fidelity Insurance & Trust Co. v. Miller, 89 Pa. 26. The oral promise of Mary Ann Nace to personally pay this purchase money, if established by sufficient testimony, would have been binding upon her and her estate, if made at the time she received her deed and delivered her mortgage. The title in fee which she received would have been a sufficient consideration to support the promise. Her declarations made in her lifetime that she had made such a contract would have been admissible as against her and these appellees: Hunt's Appeal, 100 Pa. 590. This being so we can discover no good reason for holding that the solemn recitals contained in the mortgage, which she delivered in exchange for her deed, should not be accepted as evidence of the facts there stated. That such recitals are evidence, competent to establish the facts

stated, is a matter which we are not called upon to decide upon mere first impression; it is well settled, not only in Pennsylvania but other jurisdictions. The recitals in a deed are evidence (though in some instances not conclusive) against the grantor and all who claim under him, as between the parties to the instrument: Stoever v. Whitman, 6 Binney, 416; Smith v. Webster, 2 Watts, 478; Mehaffy v. Dobbs, 9 Watts, 363; Mumford v. Wardwell, 72 U. S. 423; Carver v. Astor, 29 U. S. 1; 13 Cyc. 611.

Did the recitals of the mortgage in this case, if true, establish that Mary Ann Nace, at the time she acquired title to the tract of land, had assumed a personal liability to pay the purchase money? The recitals of the mortgage, so far as they are material to the determination of this question, are as follows, viz.: "Whereas, the said Mary Ann Nace in and by her certain obligation or writing obligatory under his hand and seal duly executed, bearing even date herewith, stands firmly bound unto the said Joseph N. Gross in the sum of $2,400 lawful money of the United States of America, conditioned for the payment of the just sum of $1,200 lawful money as aforesaid, immediately upon the decease of Mary Ann Nace, widow of said Jonas Nace, deceased, to the heirs and legal representatives of the said Jonas Nace, deceased, together with interest to be paid to said Mary Ann Nace, widow of said Jonas Nace, deceased, payable annually at the rate of five per centum per annum; on the first day of April in each and every year during the whole period of her life. Provided, however, and it is thereby expressly agreed, that if at any time default shall be made in the payment of interest as aforesaid for the space of thirty days after any annual payment thereof shall fall due, then and in such case the whole debt shall, at the option of the said obligee, his executors, administrators, or assigns, become due and payable immediately and payment of said principal debt, and of interest thereon, may be enforced and recovered at once, anything therein contained to the contrary not-

withstanding. And provided further, however, and it is thereby expressly agreed, that if at any time thereafter, by reason of any default in payment, either of said principal sum at maturity, or of said interest, a writ of fieri facias is properly issued upon the judgment obtained upon said obligation, or by virtue of said warrant of attorney, or a writ of scire facias is properly issued upon this indenture of mortgage, an attorney's commission for collection, viz.: five per cent shall be payable, and shall be recovered in addition to all principal and interest then due, besides cost of suit, as in and by the said recited obligation and the condition thereof, relation being thereunto had may fully and at large appear. Now, this indenture witnesseth, That the said Mary Ann Nace as well for and in consideration of the aforesaid debt or principal sum of $1,200 and for the better securing the payment of the same, with interest as aforesaid." The instrument then proceeds with the usual covenants of a mortgage conveying the land as a security for the payment of the debt. The recital that the mortgagor, in and by her writing obligatory under her hand and seal duly executed, being of even date therewith, stood firmly bound, necessarily implied that the obligation had been contemporaneously duly delivered to the mortgagee, in other words, that she had delivered her bond, binding herself to pay the debt. The recital does not stop, however, with the statement that the mortgagor was bound by her bond, which means legally bound, but it proceeds and recites at length the condition of that bond, which was primarily "for the payment of the just sum of $1,200 lawful money as aforesaid," etc.; together with the provisions which were "thereby (by the bond) expressly agreed" upon, in case of default in payment. These recitals clearly and distinctly imply, not only that a bond was given which bound Mary Ann Nace to pay the debt, but that it was a bond upon which a judgment might lawfully be entered, upon which a writ of fieri facias might properly issue, for the collection of the money from personal property.

If these recitals of the mortgage were true Mary Ann Nace assumed a personal obligation to pay this purchase money, at the time she acquired title to the land, and the debt would be a valid claim against the personal property of her estate. The recitals were, as against the appellees, competent evidence of the facts stated, and in the absence of any other evidence were sufficient to sustain the claim of the appellants. The conveyance of the land was made and the mortgage was executed and recorded in March, 1892. The principal of the unpaid purchase money, for which the bond is recited to have been given, did not become due until the death of Mary Ann Nace, in March, 1910, almost eighteen years after the date of the conveyance. Joseph N. Gross, the executor of the will of Jonas Nace, deceased, had died some years before the death of Mary Ann Nace, and thus both the grantor and grantee in the deed, the only parties to the contract for the sale of the land and the payment of the purchase money, were dead, when that money became payable. The only oral evidence which was offered before the auditor and considered by the court below related to the efforts which were made to find the bond, the condition of which was recited in the mortgage. That search seems to have been thoroughly made and to have embraced the papers of all persons into whose hands the bond, if still in existence, might probably have come, but no bond was found. There was not a scintilla of evidence indicating that any part of the principal sum of the purchase money for this tract of land had ever been paid, or that any of the parties entitled to receive it had ever released their claim; there is nothing in the case upon which to base a presumption that the purchase money or any part of it has been paid.

The claim presented by the appellants was not an action upon a mortgage, and we have here presented no question of pleading. The only question involved is whether Mary Ann Nace, at the time she acquired title to the tract of land, agreed to be personally bound to pay the purchase

money. The only evidence upon that point is found in the recitals of the mortgage which she then executed, in which she states that she had become bound for the amount of that purchase money by her written obligation of that date, and sets forth the condition of that obligation in terms such as to necessarily imply her personal liability for the debt. This was sufficient evidence, at least prima facie, of the right of the appellants to payment of their claim, and, the appellees having presented no evidence whatever tending to impeach that right, we are of opinion that the conclusion of the auditor was correct and that the learned court below fell into error in sustaining the exceptions to his report. The specifications of error are sustained.

The decree of the court below is reversed and the record is remitted with direction to make distribution to the claim of appellants, and it is ordered that the costs of this appeal and in the court below be paid out of the fund in the hands of the accountant.